**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **WILLIAM J. BECHAM, JR.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:11-CV-73 (MTT)** |
| ) | |
| **SYNTHES (U.S.A.),** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |
| **SYNTHES (U.S.A.),** *et al.,* ) | |
| ) | |
| **Counterclaim Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **WILLIAM J. BECHAM, JR. and** ) | |
| **CROSSLINK ORTHOPAEDICS, LLC,** ) | |
| ) | |
| **Counterclaim Defendants** ) | |
| _____) | |

## <u>ORDER</u>

This matter is before the Court on the Plaintiff's Motion for Summary Judgment
(Doc. 10); the Defendants' Motion to Dismiss (Doc. 13); and the Counterclaim
Defendants' Motion to Dismiss (Doc. 23).   For the following reasons, the Plaintiff's
Motion for Summary Judgment is **GRANTED**; the Counterclaim Defendants' Motion to
Dismiss is **GRANTED with prejudice** on Counts I-IV of the Counterclaim, and
**GRANTED without prejudice** on Counts V-VIII of the Counterclaim; and the
Defendants' Motion to Dismiss is **DENIED.**

## I.   PROCEDURAL AND FACTUAL BACKGROUND

This is a declaratory judgment action to determine the enforceability of restrictive covenants in employment agreements.  On September 11, 2000, Plaintiff William J. Becham, Jr. began working for Defendant Synthes (U.S.A.)[1] as a sales consultant in "Synthes Territory 315," which includes Macon, Georgia.  Synthes is in the business of developing, manufacturing, and selling medical and bone implant products.  Synthes has a global presence, and generated over $3.5 billion in sales in 2010.  In 2010, Synthes had 11,426 employees, of whom 32% were in sales.

When Becham was hired, he signed a Confidentiality, Non-Solicitation, and Non-Competition Agreement (hereafter "Non-Compete Agreement"), as well as an Employee Innovation and Non-Disclosure Agreement (hereafter "Non-Disclosure Agreement"). These agreements contain the following covenants:

- No disclosure or communication of confidential information at all times during and after employment with Synthes.

- For a period of one year after employment terminates, no solicitation of customers or prospective customers who Becham solicited or was responsible for during the last three years of his employment with Synthes.

- For a period of one year after employment terminates, no solicitation of, or offer to, any Synthes employee to leave employment with Synthes.

- For a period of one year after employment terminates, not to work for (as an employee, consultant, contractor, agent or representative) any competitor of Synthes in the territories Becham was responsible for at the time of the agreement, or during the last year of his employment with Synthes.

---

[1]  The Defendants are collectively referred to as "Synthes."

(Doc. 10-2, at 8-13).  The Non-Compete Agreement contains a choice-of-law provision stating the agreement is governed by Pennsylvania law.  The Non-Disclosure Agreement does not contain a choice-of-law provision.

On December 1, 2010, Becham notified Synthes' Regional Manager Chris Lockett that he would resign effective December 31, 2010.  Later that day, Lockett sent Becham an email with the following terms of separation:

- You will be compensated in your current territory (including your portion of [the Medical Center of Central Georgia]) through 12/31/2010, to be paid on 1/15/2011.

- You will receive a Lost Sales Compensation payment of $20,521.28 to be paid on 1/15/2011.

- We will meet on 12/21/2010 to conduct the check-out process for you to return all materials that belong to Synthes.

- You must continue to honor your obligation with regard to the Confidentiality, Non-Solicitation, and Non-Competition Agreements.

(Doc. 22-1, at 6).  Becham sent an email accepting the terms of the agreement that day, again December 1.  Synthes alleges Becham "received and accepted these significant payments at the end of January 2011."  (Doc. 22, at 19).

Becham left Synthes to work for a competitor.  Specifically, he began working for Counterclaim Defendant CrossLink Orthopaedics, LLC, a company that also sells medical and bone implant products in Macon, on February 28.[2]

Becham filed this action on February 25 seeking a declaration that the restrictive covenants are unenforceable as a matter of law because they violated Georgia's public policy against contracts in restraint of trade.

---

[2]  Becham claims he did not perform work for CrossLink prior to his resignation from Synthes (Doc. 14, at 10).

Less than a month later, Becham moved for summary judgment.  In its Response, Synthes contended that the covenants were valid under Pennsylvania law, the application of which would not offend Georgia's new public policy favoring restrictive covenants in employment contracts.  This argument is based upon recent legislative and constitutional developments in Georgia.  Anticipating the argument that this might be a retroactive application of a law not intended to be applied retroactively, Synthes next argues that Becham "reaffirmed" the restrictive covenants when he accepted Synthes' severance terms and payments and, at that time, the public policy favoring restrictive covenants was in effect.

Synthes also moved to dismiss the Complaint because Becham had not sufficiently pled that he was in breach of the restrictive covenants, and thus there was no case or controversy before the Court.  In other words, Becham contended that he was in breach of his contractual obligations, and his former employer, effectively, contended he was not.   There the matter might have rested, with Becham happily working for CrossLink, and Synthes satisfied that he was not violating his restrictive covenants by doing so.  Of course, Synthes might at some point decide that maybe Becham's work at Crosslink was in violation of the employment agreements and try to do something about it.  That, no doubt, would raise questions of estoppel, laches, waiver, and similar defenses.  But the matter did not rest there; Becham amended his complaint to allege that he really, really was in breach of the restrictive covenants.

Synthes also counterclaimed against Becham for breach of contract and estoppel (Counts I-III).  Synthes joined CrossLink, and asserted a counterclaim for tortious interference with contractual relations against it (Count IV).  Synthes brought

counterclaims against both Becham and CrossLink for tortious interference with business relations (Count V), violation of the Georgia Trade Secrets Act of 1990, O.C.G.A. § 10-1-760 *et seq.* (Count VI), unfair competition (Count VII), and litigation expenses pursuant to O.C.G.A. § 13-6-11 (Count VIII).

## II.  DISCUSSION

### A.    Becham's Motion for Summary Judgment

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224.  The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor."  *Id.*

### 1.    History of Restrictive Covenant Legislation in Georgia

Historically, Georgia has viewed restrictive covenants in employment contracts with extreme disfavor.  In most situations, one faulty covenant in a contract voided the entire contract because Georgia courts have refused to use the "blue pencil" to edit the offensive covenant out of the contract.

In 1990, the Georgia General Assembly passed legislation, codified at O.C.G.A. § 13-8-2.1, that sought to ease Georgia's policy against restrictive covenants. However, in *Jackson & Coker, Inc. v. Hart*, the Georgia Supreme Court held that the statute was unconstitutional because Georgia's public policy was embodied in Georgia's Constitution, which provided, "The General Assembly shall not have the power to authorize any contract or agreement which may have the effect of or which is intended to have the effect of defeating or lessening competition, or encouraging a monopoly, which are hereby declared to be unlawful and void." 261 Ga. 371, 372, 405 S.E.2d 253, 255 (1991) (quoting Ga. Const. Art. III, § VI, ¶ V(c) (1983)).

In 2009, the General Assembly passed HB 173 (also codified at O.C.G.A. § 13-8-2.1), which was substantially the same legislation struck down in *Jackson & Coker*. To prevent the *Jackson & Coker* outcome, the General Assembly passed HR 178, a constitutional amendment that would change Georgia's public policy to recognize reasonable restraints in trade. The General Assembly made the effectiveness of the 2009 law contingent upon voter approval of the constitutional amendment, which the voters did at the November 2, 2010, general election.

Although the General Assembly successfully amended the Georgia Constitution, it apparently forgot to ensure the new amendment would become effective before the effective date of the 2009 law. House Bill 173 stated it would become effective on the day following the ratification of the constitutional amendment. However, the constitutional amendment did not contain an effective date, and pursuant to Art. X, § I, ¶ VI of the Georgia Constitution, it became effective January 1, 2011. Fearing the 2009

law would suffer the same fate as its predecessor, the General Assembly passed a

similar bill, also codified at O.C.G.A. § 13-8-2.1, which became effective May 11, 2011.[3]

In sum, the 2009 law became effective November 3, 2010, but without the

necessary constitutional foundation in place.  The constitutional amendment changing

Georgia's public policy became effective January 1, 2011.  The legislation curing any

constitutional defect became effective May 11, 2011.

### 2.    Determining the Applicable Law

As noted, the Non-Compete Agreement contains a choice-of-law provision.  Like

many actions regarding the enforceability of restrictive covenants in employment

contracts with a choice-of-law provision, the outcome here largely turns on whether

Georgia law applies notwithstanding the Parties' agreement to be governed by

Pennsylvania law.  The issue is complicated somewhat by Georgia's efforts, ultimately

successful, to change its longstanding public policy disfavoring restrictive covenants.

In Georgia, when a choice-of-law provision purports to apply the law of another

jurisdiction, courts must engage in a two-step process to determine whether Georgia

law should apply.  First, the court must determine whether there were significant

contacts with Georgia, such that the application of Georgia law would be "neither

arbitrary nor constitutionally impermissible."  *Convergys Corp. v. Keener*, 276 Ga. 808,

---

[3]  Section 1 to HB 30 states:

> It has been suggested by certain parties that because of the effective date
> provisions of HB 173, there may be some question about the validity of that
> legislation.  It is the intention of this Act to remove any such uncertainty by
> substantially reenacting the substantive provisions of HB 173, but the enactment
> of this Act should not be taken as evidence of a legislative determination that HB
> 173 was in fact invalid.

2011 Ga. Laws Act 99 § 1.

810, 582 S.E.2d 84, 85 (2003).  Second, the court determines whether the law of another jurisdiction would contravene the public policy of Georgia, and, if so, applies Georgia law.  *Keener*, 276 Ga. at 810-11, 582 S.E.2d at 85-86.

Here, the Parties do not dispute that Becham has significant contacts with Georgia.  However, the Parties strongly disagree whether Pennsylvania law contravenes Georgia public policy because they do not agree which Georgia public policy is applicable.  Synthes argues that for purposes of determining whether to apply Pennsylvania law, the Court should apply Georgia's current public policy as reflected by the constitutional amendment that became effective January 1, 2011.  Synthes claims Pennsylvania law does not contravene Georgia's current public policy, and thus Pennsylvania law should apply.  Becham responds that applying Georgia's current public policy is effectively a retroactive application of Georgia's new law, and the legislation specifically prohibits retroactive application.

It is apparent that the General Assembly did not intend for the 2009 and 2011 versions of O.C.G.A. § 13-8-2.1 to have any retroactive application.  The 1990 law, on the other hand, provided that it would "apply to all remedies sought or granted after the effective date."  1990 Ga. Laws 1676 § 2.  In an early interpretation of that law, the Eleventh Circuit construed this language as "strongly impl[ying] that the legislature wanted a retroactive application of the statute," and applied the 1990 law to an agreement entered into before the law's effective date.  *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1446 (11th Cir. 1991).  However, less than a year later, in *Jackson & Coker*, the Supreme Court of Georgia voided the 1990 law because it conflicted with Georgia's constitutional prohibition against contracts in restraint of trade.

Significantly, the General Assembly did not place the 1990 effectiveness language into the 2009 law or the 2011 law even though *Jackson & Coker* did not strike down the 1990 law for retroactive application.  Rather, the General Assembly provided the laws "shall not apply in actions determining the enforceability of restrictive covenants entered into before" the effective date.  2011 Ga. Laws Act 99 § 5; 2009 Ga. Laws 231 § 4.

Based upon the language in the 2009 law and the 2011 law, the Georgia Court of Appeals and Judge Richard Story of the Northern District of Georgia have held that O.C.G.A. § 13-8-2.1 and the constitutional amendment do not apply to agreements entered into before the effective date.  *Boone v. Corestaff Support Servs., Inc.*, 2011 WL 3418382, at *3-*4 (N.D. Ga. Aug. 3, 2011) (discussing 2011 law); *Bunker Hill Intern., Ltd. v. Nationsbuilder Ins. Servs., Inc.*, 309 Ga. App. 503, 505 n.1, 710 S.E.2d 662, 665 n.1 (2011) (discussing 2009 law); *Gordon Document Prods., Inc. v. Service Techs., Inc.*, 308 Ga. App. 445, 448 n.5, 708 S.E.2d 48, 52 n.5 (2011) (discussing 2009 law); *Cox v. Altus Healthcare and Hospice, Inc.*, 308 Ga. App. 28, 30, 706 S.E.2d 660, 663-64 (2011) (discussing 2009 law).

Judge Story's order addressed specifically the impact of the 2011 law on choice-of-law analysis.  Judge Story stated when "determining whether the application of [foreign] law creates a conflict, the Court should apply Georgia's public policy as it existed at the time [the employee] entered into the Non–Compete."  *Boone*, 2011 WL 3418382, at *3.

Synthes argues the Court should ignore these cases, and follow *Commercial Credit Plan, Inc. v. Parker*, 152 Ga. App. 409, 263 S.E.2d 220 (1979), which involved a

difference between Georgia and South Carolina usury laws.  The Georgia law prohibited small loan contracts with terms in excess of 24 months.  However, the parties' contract was executed in South Carolina, and South Carolina law allowed 36 month notes.  Subsequently, the Georgia General Assembly passed legislation allowing 36 month loans.  The debtors, residents of Georgia, argued that enforcing the agreement would be usurious because Georgia law at the time they got their loan prohibited loan contracts in excess of 24 months.  Division one of the opinion held that the agreement did not violate Georgia public policy because the loan contract was enforceable in South Carolina, and South Carolina's laws were "similar in principle and purpose."  *Parker*, 152 Ga. App. at 415, 263 S.E.2d at 224.  Thus, it appears the court considered both laws an effort by the states to regulate usurious loans.  The fact that South Carolina took a somewhat different approach did not necessarily create a conflict between the laws.  In division two of the opinion, the court specifically addressed the argument that the prior Georgia law specifically prohibited loans contracts in excess of 24 months.  The court held that the terms of the note were not "so oppressive, unconscionable and unreasonable as a matter of law as to refuse comity to South Carolina law."[4]  *Parker*, 152 Ga. App. at 415, 263 S.E.2d at 225.

Synthes' reliance on *Parker* is misplaced.  First, the loan agreement in *Parker* was executed in South Carolina, and the court in *Parker* repeatedly recognized that principles of comity favored enforcing the South Carolina agreement.  Here, the record is silent on where the agreements were executed, although they were likely executed in

---

[4]  It is difficult to understand the difference between the first and second part of the opinion. *Parker* seems to imply that some laws may be similar in principle and purpose, and yet still unconscionable and unreasonable so as to refuse comity.

Georgia.[5]  Consequently, comity is of less significance.  Second, although different from Georgia's 24 month law, South Carolina's 36 month law was similar in principle and purpose.  Here, Pennsylvania law is not at all similar in principle and purpose to Georgia's public policy at the time Becham executed the agreements.  On the contrary, the approach taken by Pennsylvania is almost diametrically opposed to Georgia's public policy at the time Becham executed the agreements.  Thus, while the application of a similar South Carolina law in *Parker* was not oppressive, unconscionable and unreasonable an application of Pennsylvania law to these facts would be.[6]

Synthes next argues that Becham "reaffirmed" his restrictive covenants at a time when the new policy was in effect.  The discussion of the General Assembly's maneuvering makes clear this argument has no merit.  While the 2009 law became effective November 3, 2010, the constitutional underpinning for the 2009 law did not become effective until January 1, 2011.  Here, Synthes' alleged reaffirmation occurred when Becham "accepted" Synthes' severance terms on December 1, 2010, when Georgia's old public policy was in place.  The fact that payments may have been made after the effective date of the constitutional amendment does not change the date of acceptance.  Thus, because any reaffirmation occurred before January 1, 2011, old

---

[5]  The Amended Complaint states Becham began employment with Synthes in Macon, Georgia on or around September 11, 2000, the day the restrictive covenants were executed.  (Doc. 14, at 4).

[6]  For purposes of resolving this motion, Becham does not disagree that this agreement would be enforceable under Pennsylvania law.  Accordingly, the Court will assume the agreement would be enforceable under Pennsylvania law.

Georgia law applies.[7]

Accordingly, because Pennsylvania law contravenes old Georgia public policy, and Becham did not reaffirm the agreements before Georgia's public policy changed, old Georgia law shall govern this action.

### 3.    Enforceability Pursuant to Old Georgia Law

The next question is whether these restrictive covenants are violative of old Georgia law.  The answer is foretold by the conclusion that Pennsylvania law, which allows the covenants, conflicts with old Georgia public policy.  As discussed below, several of the covenants are void under old Georgia law.  Further, old Georgia law, unlike Pennsylvania law, prevents courts from blue penciling, or severing, overbroad restrictive covenants in employment contracts, and the overbreath of one portion of the covenant renders the entire covenant unenforceable.[8]  *Watson v. Waffle House, Inc.*, 253 Ga. 671, 671-72, 324 S.E.2d 175, 177 (1985).  Thus, both employment agreements are unenforceable.

The Non-Compete Agreement in Becham's contract prevents him from working for a competitor as an employee, consultant, contractor, agent, or representative for a period of one year after employment terminates.  It is clear that, in Georgia, a covenant

---

[7]  The Court need not decide whether the new Georgia restrictive covenant statute became effective on January 1, 2011, or May 11, 2011, because it is clear the agreement was entered into before January 1, 2011.  Neither does the Court decide whether a void covenant can be "reaffirmed" to life.

[8]  A blue pencil can be used in the narrow situation when an employment agreement contains a non-compete or non-solicit covenant in addition to a non-disclosure or non-recruit covenant.  An invalid non-compete or non-solicit covenant does not invalidate the non-disclosure and non-recruit covenants in the same agreement.  *Johnstone v. Tom's Amusement Co., Inc.*, 228 Ga. App. 296, 297, 491 S.E.2d 394, 397 (1997).

that prohibits an employee from working for a competitor in any capacity is unenforceable. *Fields v. Rainbow Intern. Carpet Dyeing and Cleaning Co.*, 259 Ga. 375, 375, 380 S.E.2d 693, 693-94 (1989); *Howard Schultz & Associates v. Broniec*, 239 Ga. 181, 184, 236 S.E.2d 265, 268 (1977); *Johnstone v. Tom's Amusement Co., Inc.*, 228 Ga. App. 296, 300, 491 S.E.2d 394, 399 (1997). Synthes tries to avoid this well-settled rule by arguing the Court must look at the particular factual context, a theory that originated in *Watson*.[9] Viewed in context, Synthes argues, all positions for competitors in that territory are similar to Becham's position at Synthes. However, *Watson* involved franchisees who were the "heart and soul" of their Waffle House restaurant, and "[t]heir participation involved every facet of the business." 253 Ga. at 672, 324 S.E.2d at 178. Here, Becham, was hardly the "heart and soul" of Synthes because his participation only involved the sales facet of the Synthes' business.

Further, the non-compete covenant contains "'a territorial limitation not determinable until the time of the employee's termination [that] invalidates the provision….'" *Ceramic & Metal Coatings Corp. v. Hizer*, 242 Ga. App. 391, 393, 529 S.E.2d 160, 163 (2000) (quoting *Jarrett v. Hamilton*, 179 Ga. App. 422, 424-425, 346 S.E.2d 875, 877 (1986)). Thus, the entire non-compete covenant is unenforceable. The invalid non-compete covenant also invalidates the non-solicitation of customers or prospective customers covenant. *Johnstone*, 228 Ga. App. at 297, 491 S.E.2d at 397.

With regard to non-solicitation or non-recruitment of employees, covenants that have no territorial restriction are unenforceable. *Hulcher Servs., Inc. v. R.J. Corman R.R. Co., LLC*, 247 Ga. App. 486, 491-92, 543 S.E.2d 461, 467 (2000). Here, the non-

---

[9] Synthes also argues there is a genuine issue of material fact of whether Becham's territory was Macon.

recruit covenant applies to *any* Synthes employee in the world, and thus is unenforceable pursuant to *Hulcher*.  Finally, the confidentiality covenant and the non-disclosure covenant both lack time limitations.  It is clear these restrictions violate old Georgia law.  *See Howard Schultz*, 239 Ga. at 187, 236 S.E.2d at 270 (ruling non-disclosure of confidential information provision without time limitation unenforceable).

Accordingly, both the Non-Compete Agreement and the Non-Disclosure Agreement are unenforceable.

Because the restrictive covenants are void on their face, there is no need to conduct discovery to identify the scope of Becham's employment with CrossLink.  Similarly, there is no need to address Synthes' estoppel argument.  *See Kirkland v. Pioneer Machinery, Inc.*, 243 Ga. App. 694, 695, 534 S.E.2d 435, 437 (2000) (finding no cause of action for estoppel when underlying contract was unenforceable).

Accordingly, Becham's Motion for Summary Judgment is granted.

**B.    Motions to Dismiss**

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain specific factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Federal Rules employ a notice pleading standard, which requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, __ U.S. at __, 129 S. Ct. at 1949.  A pleading containing mere "labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."
*Twombly*, 550 U.S. at 555.  Rather, the complaint must "give the defendant fair notice of
what the claim is and the grounds upon which it rests."  *Id.* (citation omitted).

      **1.**     **Becham and CrossLink's Motion to Dismiss**

      The Parties agree that the viability of Counts I-IV of the Counterclaim are
contingent upon the enforceability of the restrictive covenants.  As stated above, the
restrictive covenants are unenforceable, and thus Becham and Crosslink's Motion to
Dismiss is granted with prejudice on Counts I-IV.

      In Count V, Synthes asserts a claim for tortious interference with business
relations against Becham and CrossLink.  To recover, a plaintiff must show the
defendant:  "(1) acted improperly and without privilege, (2) acted purposely and with
malice with the intent to injure, (3) induced a third party or parties not to enter into or
continue a business relationship with the plaintiff, and (4) caused plaintiff financial
injury."  *Renden, Inc. v. Liberty Real Estate Ltd. Partnership III*, 213 Ga. App. 333, 334,
444 S.E.2d 814, 817 (1994).

      Here, Synthes states that CrossLink's conduct is "part of a longstanding and
inappropriate business strategy by CrossLink to openly and notoriously raid Synthes'
sales force for improper gains and unfair competitive advantage, all while preemptively
filing litigation to justify admitted violations of Synthes' contracts with its former
employees."  (Doc. 20, at 23).  Synthes recites the elements of the tort, and argues
discovery is necessary to determine whether Becham and Crosslink acted without
privilege, and therefore dismissal is inappropriate.  Becham and CrossLink argue there
is no factual basis for Synthes' allegations they acted without privilege because the

restrictive covenants are unenforceable.  Becham and CrossLink are correct; pursuant to *Iqbal* and *Twombly*, Synthes must provide a factual basis for its allegation that they acted without privilege.  Here, the restrictive covenants are unenforceable, and Synthes fails to provide any other factual basis for its contention Becham and CrossLink acted without privilege.  Thus, Synthes' tortious interference with business relations counterclaim is dismissed without prejudice.

In Count VI, Synthes claims Becham and CrossLink violated the Georgia Trade Secrets Act of 1990, O.C.G.A. § 10-1-760 *et seq.*  The Georgia Trade Secrets Act defines a trade secret as:

> [I]nformation, *without regard to form, including, but not limited to*, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, *or a list of* actual or potential customers or suppliers which is not commonly known by or available to the public and which information
>
> > (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> >
> > (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.C.G.A. § 10-1-761(4) (emphasis added).  The Georgia Supreme Court has clarified that only a tangible list of actual or potential customers can constitute a trade secret. *Avnet, Inc. v. Wyle Laboratories, Inc.*, 263 Ga. 615, 619-20, 437 S.E.2d 302, 305 (1993).

Here, based upon the Amended Complaint, Synthes claims Becham disclosed information about Synthes' current or former customers, and information about Synthes' product performance.  With regard to customer information, only tangible customer lists

are protected, and Synthes does not allege Becham disclosed a tangible customer list. Also, while product performance constitutes protectable information, Synthes does not allege Becham disclosed information that is not generally known to, and readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. Thus, Synthes has failed to state a claim for violation of the Georgia Trade Secrets Act, and that counterclaim is dismissed without prejudice.

Finally, Synthes asserts an unfair competition counterclaim against Becham and CrossLink. The Parties agree the doctrine of unfair competition is preempted by the Georgia Trade Secrets Act to the extent the claim involves a trade secret. Synthes argues its counterclaim for unfair competition is distinct from its trade secret counterclaim, and it relies upon *Union Carbide Corp. v. Tarancon Corp.*, 742 F. Supp. 1565, 1580 (N.D. Ga. 1990), for the proposition that Georgia recognizes the tort of unfair competition. However, *Union Carbide* merely acknowledged that other jurisdictions recognize the tort, and the court specifically stated that the plaintiff failed to cite any Georgia authority supporting a claim for unfair competition. *Id.*

Assuming Synthes can assert an unfair competition claim in Georgia, the tort only applies to "'confidential matters and fiduciary relations which do not fit within the formal categories of either trade secret or patent protection, yet nevertheless constitute an advantage wrongfully appropriated by defendant.'" *Id.* (quoting *Johns-Manville Corp. v. Guardian Industries Corp.*, 586 F. Supp. 1034, 1074 (E.D. Mich. 1983). Here, Synthes does not allege Becham occupied a confidential or fiduciary position at Synthes, and, with over 3,500 salespersons, it would be extremely difficult to make this showing. If the mere showing of an employment relationship Becham and Synthes was

sufficient to constitute a confidential relationship, "[s]uch a standard would convert every salesman's employment situation into one meriting protection by the courts, even in the absence of contract." *Wesley-Jessen, Inc. v. Armento*, 519 F. Supp. 1352, 1362 (N.D. Ga. 1981). "This determination is, of course, without prejudice to [Synthes'] right to demonstrate the requisite … confidential relationship…." *Id.* Thus, Synthes' unfair competition counterclaim is dismissed without prejudice.

Accordingly, Becham and CrossLink's Motion to Dismiss is granted with prejudice on Counts I-IV of the Counterclaim, and granted without prejudice on Counts V-VIII of the Counterclaim.[10]

### 2. Synthes' Motion to Dismiss

Synthes' Motion to Dismiss is denied as moot because Becham filed an Amended Complaint to include allegations that he was in breach of the restrictive covenants.

### III. CONCLUSION

For the foregoing reasons, Becham's Motion for Summary Judgment (Doc. 10) is **GRANTED**;[11] Becham and CrossLink's Motion to Dismiss (Doc. 23) is **GRANTED with prejudice** on Counts I-IV of the Counterclaim, and **GRANTED without prejudice** on Counts V-VIII of the Counterclaim; and Synthes' Motion to Dismiss (Doc. 13) is **DENIED**.

---

[10]  Because the Motion to Dismiss is granted on Counts I-VII, there is no need to discuss Count VIII.

[11]  A Motion for Speedy Hearing is attached to the Motion for Summary Judgment.  This motion is **DENIED** as moot.

SO ORDERED, this the 14th day of September, 2011.


s/Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT